UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ESTELA TULLI-MAKOWSKI, as Administrator ad Prosequendeum of the ESTATE OF VIVIANA TULLI,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COMMUNITY EDUCATION CENTERS, INC., *et al.*,**<br><br>**Defendants.** | Civ. No. 2:12-06091 (WJM)<br><br>**OPINION** |

Plaintiff Estella Tulli-Makowski, the administrator of the estate of Viviana Tulli, brings the instant suit seeking money damages for Viviana Tulli's murder.  This matter comes before the court on two motions.  The State of New Jersey, the Department of Corrections of the State of New Jersey, and the New Jersey State Parole Board (together the "State Defendants"), the University of Medicine and Dentistry of New Jersey ("UMDNJ") and the UMDNJ-University Hospital (together the UMDNJ Defendants), and the Department of Public Safety[1] move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint.  There was no oral argument.   Fed. R. Civ. P. 78(b).  For the reasons set forth below, the State Defendants' motion to dismiss is **GRANTED**.  The UMDNJ Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  The Department of Public Safety's motion to dismiss is **GRANTED**.

## I.    BACKGROUND

On October 7, 2008 David Goodell was arrested for assaulting his girlfriend.  Compl. ¶ 21, ECF No. 1.  Goodell pled guilty, and he was given a prison term of four years.  *Id.* ¶  21.  While he was in prison, Goodell sometimes communicated with a friend named Viviana Tulli.  *Id.* ¶¶ 21, 22.

On February 11, 2010, the New Jersey State Parole Board transferred Goodell from prison to a halfway house in Newark called Logan Hall.  *Id.* ¶¶ 27, 34.  Apparently, Logan Hall was designated by the Commissioner of the Department of Corrections as a "secure and appropriately supervised place of confinement" for prisoners.  *Id.* ¶ 27.

---

[1] The Department of Public Safety provides security services for UMDNJ and UMDNJ-University Hospital.

Logan Hall was not a state owned facility. It was part of the EHCA-CEC Halfway House System, which was operated by Community Education Centers ("CEC"), a for-profit corporation. *Id.* ¶ 28. Plaintiff alleges that the EHCA-CEC Halfway House System is horribly mismanaged and has experienced an "inordinate" number of prisoner escapes. *Id.* ¶¶ 31-32.

On April 29, 2010, Goodell faked a seizure at Logan Hall, and he was taken to UMDNJ-University Hospital by an unarmed CEC employee. *Id.* ¶ 35. Goodell escaped from the hospital and proceeded to murder Viviana Tulli. *Id.* ¶¶ 36, 40.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).

A Complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 1949.

## III.   DISCUSSION

The Complaint contains eight counts. Count I is a claim for survivorship under N.J.S.A. 2A:15-3. Count II is a claim for wrongful death under N.J.S.A. 2A:31-1. Count III is a claim for a violation of 42 U.S.C. § 1983 ("Section 1983"). Count IV is a claim for fundamental fairness (i.e. due process violations) under New Jersey common law. Count V is a claim for "sham non-profit entity—illegal operation of a halfway house system) under New Jersey common law. Count VI is a claim for piercing the corporate veil under New Jersey common law. Count VII is a claim for "corporate officer/manager participating in tort" under New Jersey common law. Count VIII is a claim for failure to exercise reasonable care under New Jersey common law.

The State Defendants, the UMDNJ Defendants, and the Department of Public Safety (together "Defendants") move to dismiss Count III, arguing that they are not "persons" who can be sued under 42 U.S.C. § 1983. Defendants also move to dismiss the additional claims asserted against them, arguing that they are immune from suit under the

New Jersey Tort Claims Act ("NJTCA").[2]  Finally, the Department of Public Safety moves to dismiss all claims, arguing that it is a part of UMDNJ and not a separate legal entity.

### A.     Claims Against The Department Of Public Safety

The Department of Public Safety moves to dismiss all claims, arguing that it is not an independent legal entity separate from UMDNJ.  Plaintiff does not dispute that the Department of Public Safety lacks independent legal existence.  Accordingly, the Court will **DISMISS** all claims against the Department of Public Safety **WITH PREJUDICE**. *See Reid v. Kraft General Foods, Inc.*, No. 93-5796, 1995 WL 262531, at *10 n.6 (E.D.Pa. Apr. 27, 1995).

### B.     Claims Against The State Defendants And The UMDNJ Defendants

The State Defendants and the UMDNJ Defendants move to dismiss the Section 1983 claim and the State Law Claims.

### 1.     Section 1983

Count III is a claim for violations of Section 1983.  The UMDNJ Defendants and the State Defendants move to dismiss, arguing that they are not "persons" subject to liability under Section 1983.  Plaintiffs oppose the UMDNJ Defendants' motion but not the State Defendants' motion.

### a.     Applicable Law

Section 1983 provides:

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

(emphasis added).  "A subdivision of the state itself is . . . a 'person' [for Section 1983 purposes] if it is merely an alter ego or 'arm' of the state."  *Longoria v. New Jersey*, 168

---

[2] The Complaint is unclear as to which claims are being asserted against which Defendants.  For purposes of this motion, the Court will treat the Complaint as asserting state law claims against each Defendant under Counts I, II, and IV-VIII (together "the State Law Claims").

F. Supp. 2d 308, 315 (D.N.J. 2001).  To determine whether an entity is an alter ego of the state for Section 1983 purposes, courts weigh three "*Fitchik*" factors:

- <u>State Treasury</u>.       "[W]hether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts." *Fitchik*, 873 F.3d at 659.

- <u>Status Under State Law</u>.     "[H]ow state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation."  *Id.*

- <u>Autonomy</u>.  "What degree of autonomy the agency has."  *Id.*

*See Cooper v. Southeastern PA Transp. Authority*, 548 F.3d 296, 299 (3d Cir. 2008) (citing *Fitchik v. New Jersey Transit Rail Operations, Inc.,* 873 F.2d 655, 659 (3d Cir. 1989) (en banc)).

### b.     Whether The UMDNJ Defendants Are Persons For Purposes of Section 1983

To determine whether a public university is the alter ego of a state, courts must conduct "a fact-intensive review that calls for individualized determinations."  *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 546 (3d Cir. 2007).  The UMDNJ Defendants have not provided the Court with the information necessary for such a fact intensive review.  Indeed, they do not even cite *Fitchik*.  The UMDNJ Defendants simply argue that they are not persons under Section 1983 because state entities cannot be persons under Section 1983.  This argument is incorrect: state entities can be persons under Section 1983.  *See Kovats v. Rutgers, The State Univ.*, 822 F.2d 1303, 1312 (3d Cir. 1987).  Accordingly, the Court will **DENY** the UMDNJ Defendants' motion to dismiss.  After sufficient discovery has taken place, the UMDNJ Defendants may renew their challenge to personhood status under Section 1983.  At that point, the UMDNJ Defendants will be able to provide the Court with the information necessary for "a fact-intensive review."  *Bowers*, 475 F.3d at 546.[3]

---

[3] While the Court recognizes that some cases have held that UMDNJ is a person for Section 1983 purposes, the cases were decided roughly 25 years ago, and they are not binding.  *See Fuchilla v. Prockop*, 682 F. Supp. 247, 253-54 (D.N.J. 1987); *Fuchilla v. Layman*, 109 N.J. 319 (1988).  In the intervening 25 years, the test for alter ego status has changed slightly.  Moreover, as UMDNJ's financing has undoubtedly changed over the last 25 years, the analysis of the state treasury factor in the *Fitchik* analysis might need updating.

### c.   Whether The State Defendants Are Persons For Purposes of Section 1983

While the status of the UMDNJ Defendants under Section 1983 is unclear, the status of the State Defendants is not.  The Supreme Court has held that states are not persons under Section 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).  The Third Circuit has held that the New Jersey State Parole Board is not a person for purposes of Section 1983.  *Madden v. N.J. State Parole Bd.*, 438 F.2d 1189, 1190 (3d Cir. 1981).  And multiple courts in this District have recognized that the New Jersey Department of Corrections is not a person for purposes of Section 1983.  *See, e.g.*, *Grabow v. Southern State Corr. Fac.*, 726 F. Supp. 537, 538-39 (D.N.J. 1989).  Accordingly, the State Defendants' motion to dismiss Count III is **GRANTED,** and Count III is **DISMISSED WITH PREJUDICE** against the State Defendants.

### 2.   State Law Claims

The State Defendants and the UMDNJ Defendants move to dismiss the State Law Claims, arguing that they are immune from suit under the NJTCA.

The NJTCA provides:

Neither a public entity nor a public employee is liable for:

a. An injury resulting from the parole or release of a prisoner or from the terms and conditions of his parole or release or from the revocation of his parole or release;

b. any injury caused by:

(1) an escaping or escaped prisoner; [or]

(2) an escaping or escaped person . . . .

N.J.S.A. 59:5-2 ("Section 5-2").  The UMDNJ Defendants argue that Sections 5-2(b)(1) & (b)(2) apply here.  The State Defendants argue that Sections 5-2(a), (b)(1) & (b)(2) apply here.   Plaintiff argues that none of the provisions in Section 5-2 apply here.

The Supreme Court of New Jersey has recognized that the public entity immunity conferred by Section 5-2 "appear[s] to be absolute."  *Tice v. Cramer*, 133 N.J. 347, 367 (1993).  Plaintiff resists this conclusion, arguing that Defendants are not immune under Section 5-2 based on conduct that "shocks the conscience."  This argument is predicated on a misreading of *Fielder v. Stonack*, 141 N.J. 101, 241 (1995).  *Fielder* only addressed the "shocks the conscience" standard in its discussion of federal liability under Section 1983.  *Fielder* did not hold that the NJTCA's immunities are limited by the "shocks the conscience" standard.

5

Plaintiff's final argument is that UMDNJ-University Hospital is not immune under Section 5-2 because UMDNJ-University Hospital is not a public entity. UMDNJ is clearly a public entity for purposes of the NJTCA. *Lowe v. Zarghami*, 158 N.J. 606, 614 (1999). While the Court has not located any case addressing whether UMDNJ-University Hospital is a public entity, the Court sees no reason why UMDNJ-University—a public hospital—would not be. Accordingly, the Court will **DISMISS** the State Law Claims against Defendants **WITH PREJUDICE**.[4]

## IV.    CONCLUSION

For the foregoing reasons, the State Defendants' motion to dismiss is **GRANTED**. Counts I-VIII against the State Defendants are **DISMISSED WITH PREJUDICE**.

The UMDNJ Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Counts I, II, IV, V, VI, VII, and VIII against the UMDNJ Defendants are **DISMISSED WITH PREJUDICE**. Count III against the UMDNJ Defendants survives.

The Department of Public Safety's motion to dismiss is **GRANTED**. Counts I-VIII against the Department of Public Safety are **DISMISSED WITH PREJUDICE**.

_____ /s/ William J. Martini _____

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 10, 2013**

---

[4] To the extent Plaintiff's claims under state law seek to impose liability on individual public employees, Plaintiff's claims might not be barred. While public entities cannot be held liable for the "acts of omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct," N.J.S.A. 59:2-10, a public employee can still be held liable for conduct that was "outside the scope of his employment or constituted a crime, actual fraud, actual malice, or willful misconduct," N.J.S.A. 59:3-14.