UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTELA TULLI-MAKOWSKI, as Administrator ad Prosequendeum of the ESTATE OF VIVIANA TULLI,<br><br>Plaintiff,<br><br>v.<br><br>COMMUNITY EDUCATION CENTERS, INC., *et al.*,<br><br>Defendants. | Civ. No. 2:12-06091 (WJM)<br><br>OPINION |

After David Goodell was paroled and assigned to a halfway house called Logan Hall, he faked a seizure and was transported to UMDNJ-University Hospital. Goodell escaped from the hospital and proceeded to murder a woman named Viviana Tulli. After the murder, Plaintiff Estella Tull-Makowski, the administrator of Viviana Tulli's estate, brought the instant suit against a host of state agencies and state contractors, alleging, *inter alia*, negligence under New Jersey state law and a state created danger under 42 U.S.C. § 1983. This matter comes before the Court on a Federal Rule of Civil Procedure 12(c) motion brought by Defendants Logan Hall, Community Education Centers, Inc. ("CEC") and Education and Health Centers of America, Inc. ("EHCA"), which controlled Logan Hall, as well as the following owners, shareholders, principals, directors, officers, and/or employees of Logan Hall, CEC, and EHCA: John J. Clancy, William J. Palatucci, Dr. Robert Mackey, Michael Hellriegel, Michael Caltabiano, Debra Shannon, Michael Pelletier, Robert Mann and Maria Canevale (together with Logan Hall, CEC, and EHCA, "Defendants"). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion is **GRANTED IN PART**, and **DENIED IN PART**.

I.  BACKGROUND

The Complaint alleges as follows: Viviana Tulli, who the Court will refer to as "Plaintiff," became acquainted with David Goodell in high school. Compl. ¶ 20, ECF No. 1. On October 7, 2008, Goodell was arrested and charged with criminal terroristic

1

threats and aggravated assault against a girlfriend. *Id.* ¶ 21. Goodell pled guilty and was given a four year sentence. *Id.* While he was incarcerated, Goodell communicated with Plaintiff. *Id.* ¶ 22. When Plaintiff rejected Goodell's romantic overtures, Goodell threatened Plaintiff and Plaintiff's family. *Id.* Goodell's relationship with Plaintiff was "known to certain of the defendants" through monitoring of Goodell's phone calls. *Id.* ¶ 23. Plaintiff alleges that "defendants" knew and/or should have known that Goodell posed a danger to Plaintiff. *Id.* ¶ 25. Plaintiff also alleges that "certain of the defendants" knew that Goodell was capable of faking conditions requiring medical care. *Id.* ¶ 26.

Before Goodell's sentence was up, he was paroled and assigned to Logan Hall, a halfway house organized and established by EHCA. *Id.* ¶¶ 1, 28, 34. Pursuant to a contract with CEC, EHCA, a for-profit company, acted as the service provider for Logan Hall, as well as a number of other halfway houses in the "EHCA-CEC Halfway House System." *Id.* ¶¶ 28, 31. According to the Complaint, the EHCA-CEC Halfway House System is "plagued with deficiencies, problems, and mismanagement." *Id.* ¶ 31. It has "experienced [an] inordinate number of prisoner escapes, illegal drug activity, crime, and other unlawful conduct, presenting a continuing and real and present danger to the general public." *Id.* ¶ 32.

On August 29, 2010, Goodell faked a seizure at Logan Hall. *Id.* ¶ 33. Plaintiff alleges that Defendants should have recognized that Goodell was faking the seizure. *Id.* ¶ 36. In any event, Goodell was transported to UMDNJ-University Hospital along with a single, unarmed CEC employee. *Id.* ¶ 36. Goodell escaped from the hospital and proceeded to murder Plaintiff. *Id.* ¶ 40. Plaintiff alleges that the murder was caused, in part, by Defendants' "[f]ailure to adequately fund, staff, equip, manage, and operate the EHCA-CEC Halfway House System." *Id.* ¶ 39(j).

The instant Complaint, alleging violations of state law as well as 42 U.S.C. § 1983, was filed in state court and then removed to this Court on September 28, 2012. ECF No. 1. In late 2012, motions to dismiss were filed by the New Jersey State Parole Board, the New Jersey Department of Corrections, the State Of New Jersey, the University Of Medicine and Dentistry of New Jersey, UMDNJ-University Hospital and UMDNJ's Department of Public Safety (together the "State Defendants"). ECF Nos. 9, 13. The Court determined that the State Defendants were immune under New Jersey law, and the Court dismissed all state law claims against the State Defendants. *Tulli-Makowski v. Community Educ. Centers, Inc.*, No. 12-6091, 2013 WL 1987219, at **3-4 (D.N.J. May 13, 2013). The Court dismissed the federal Section 1983 claims against all State Defendants save UMDNJ and UMDNJ-University Hospital. *Id.* at **2-3.

On May 5, 2013, Defendants Logan Hall, CEC, EHCA, Clancy, Palatucci, Mackey, Hellriegel, Caltabiano, Shannon, Pelletier, Mann, and Canevale—but not the

2

State Defendants—moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(c).

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), judgment on the pleadings will be granted only if "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Insurance Co.*, 416 F.3d 214, 220 (3d Cir.2005) (citing *Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)). The court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* In deciding a motion for judgment on the pleadings, the court considers the pleadings and attached exhibits, undisputedly authentic documents relied on by plaintiffs and attached to the motion, and matters of public record. *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010).

## III. DISCUSSION

The Complaint asserts the following claims against Defendants: Count I is a claim for survivorship. Count II is a claim for wrongful death. Count III is a claim for state created danger under 42 U.S.C. § 1983. Count IV is a claim under the doctrine of fundamental fairness. Count V is a claim for illegal operation of a halfway house. Count VI is a claim for piercing the corporate veil. Count VII is a claim for corporate officer/manager participating in tort. Defendants move to dismiss Counts I-VII.

### A. Counts Sounding in Negligence (Counts I, II, and VII)

Counts I is a claim for survivorship. Count II is a claim for wrongful death. Count VII is a claim for corporate officer/manager participating in tort. The parties agree that all counts rise or fall depending on whether Defendants were negligent.

Defendants offer two arguments for why Counts I, II, VII should be dismissed. First, they argue that Plaintiff has failed to state a claim for negligence because she has failed to plead the existence of a duty. Second, Defendants argue that they are derivatively immune from suit because they worked as a contractor for state entities that are immune from suit.

1. Duty

The Court begins by considering whether Defendants owed Plaintiff a duty. Contrary to Defendants' argument, the Court finds that Plaintiff has pled the existence of a duty.

"[A] negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Jersey Cent. Power & Light Co. v. Melcar Utility Co.*, 212 N.J. 576, 594 (2013). The first element, duty, is a question of law to be decided by the Court. *Highlands Ins. Co. v. Hobbs Group, LLC*, 373 F.3d 347, 351 (3d Cir. 2004) (applying New Jersey negligence law). "[N]o bright line rule . . . determines when one owes a legal duty to prevent a risk of harm to another." *Wlasiuk v. McElwee*, 334 N.J. Super. 661, 666 (App. Div. 2000). "The imposition of a duty depends on the interplay of many factors, including: (1) the relationship of the parties; (2) the nature of the attendant risk; (3) the ability and opportunity to exercise control; (4) the public interest in the proposed solution; and, most importantly; (5) the objective foreseeability of harm." *Id.* Foreseeability is an objective concept based on the "totality of circumstances." *Id.* (quoting *Clohesy v. Food Circus Supermarkets, Inc.*, 149 N.J. 496, 502 (1997)). "Ultimately, [New Jersey] Supreme Court cases repeatedly emphasize that the question of whether a duty exists is one of 'fairness' and 'public policy.'" *Id.* at 666-67 (citing *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 439 (1993)). The Court will consider these factors below.

i. Control

Under New Jersey negligence law, "individuals, including [businesses], are not generally responsible for the criminal acts of others." *Estate of Desir ex rel. Estiverne v. Vertus*, 214 N.J. 303, 318 (2013). But general admits of an exception in the case of a guardian and a ward. *Champion ex rel. Ezzo v. Dunfee*, 398 N.J. Super 112, 121 (App. Div. 2008) (citing Restatement (Second) of Torts § 319). Pursuant to Section 319 of the Restatement (Second) of Torts ("Section 319"), "one who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." Restatement (Second) of Torts § 319.

Plaintiffs argue that Goodell was under the "putative custody and control" of the Defendants at the time of the murder. Defendants disagree. First, Defendants argue that Goodell was not under Defendants' control at the time of the murder because Goodell

4

was on parole. But just because Defendant was on parole, it does not necessarily follow that he was not under Defendants' control for purposes of the negligence analysis. Second, Defendants argue, citing to New Jersey State Parole Board Bid Specifications (the "Bid Specifications") for halfway houses, that Goodell was not under Defendants' control because Defendants could not have restrained Goodell at the hospital. Even if the Court can consider these Bid Specifications for purposes of the instant motion, Defendants' argument fails. The Bid Specifications provide that parolees must sign in and out of a halfway house and that parolees must carry identification cards at all times. Mackey Declaration Ex. A. at 27-28, ECF No. 26-2. The Bid Specifications also provide that while parolees are out on work release, parolees' whereabouts must be monitored by the halfway house, and the halfway house must immediately advise the New Jersey State Parole Board ("NJSPB") of any violations of the conditions of parole. *Id.* at 23. Finally, the Bid Specifications provide that when a parolee "absconds" from their halfway house, the halfway house must "immediately" notify the NJSPB. *Id.* at 46-47. On similar facts, the Supreme Court of Virginia concluded that a halfway house had control of its residents for purposes of the duty analysis. *See Dudley v. Offender Aid. & Restoration of Richmond, Inc.*, 241 Va. 270, 276 (1991).

The parties are free to revisit the issue of control on a motion for summary judgment, but for purposes of the motion to dismiss, the Court accepts Plaintiff's allegation that Goodell was under Defendants' control. Accordingly, for purposes of the motion to dismiss, the control prong weighs in favor of finding a duty.

ii.  Foreseeability

If Goodell was under Defendants' control, the next question is whether Defendants knew or should have known that Goodell was likely to cause bodily harm to others. The Complaint alleges that Goodell entered a guilty plea after he was charged with criminal terroristic threats and aggravated assault. At the very least, it is reasonable to assume that Defendants should have known about this plea when they accepted Goodell into Logan Hall. It is even reasonable to assume that Defendants actually did know about the plea when they accepted Goodell.

Several courts have held that when someone takes charge of someone they know or should know is dangerous, it is foreseeable that the dangerous individual will harm people in "an area to which the [dangerous individual] will foreseeably have access during the period of his freedom." *See Smith v. Hope Village, Inc.*, 481 F. Supp. 2d 172, 193 (D.D.C. 2007) (quoting *Dudley v. Offender Aid & Restoration of Richmond, Inc.*, 241 Va. 270, 279 (1991)). The Complaint does not say where Plaintiff was located at the

5

time she was murdered. Accordingly, whether Goodell was brought to an area where he foreseeably could have had access to Plaintiff is a fact question properly addressed on a summary judgment motion.

Furthermore, in deciding whether it was foreseeable that Goodell would harm Plaintiff, the Court takes special note of two allegations contained in the Complaint. First, paragraph 36 of the Complaint alleges that Defendants "could and should have detected that Goodell's seizure was being faked." Compl. ¶ 36. Second, paragraph 24 alleges that "certain of the defendants" knew or should have known about Goodell's threats of physical harm to Plaintiff and her family. *Id.* ¶ 24. Even if "certain of the defendants" refers only to the State Defendants, it is possible that the State Defendants told Defendants about the threats. Ultimately, if Defendants knew Goodell was faking his medical problem, and if Defendants knew Goodell had threatened Plaintiff and her family, Defendants could have foreseen that Goodell would attempt to escape and harm Plaintiff.

Defendants disagree. They maintain Plaintiff's murder was not foreseeable because they had no idea that Goodell was dangerous. Here, Defendants note that before Goodell was placed at Logan Hall, the New Jersey Department of Corrections ("DOC") had to determine that Goodell did not pose an "undue risk to public safety." N.J.A.C. 10A:20-4.4. Perhaps it was reasonable, based on the DOC's decision, to believe that Goodell was not a danger to the community. But, as noted above, fact development might indicate that Defendants had information contradicting the DOC's finding. Accordingly, for purposes of the motion to dismiss, the foreseeability prong weighs in favors of finding a duty.

### iii. Remaining Factors

Finally, in determining whether Defendants had a duty to Plaintiff, the Court considers the relationship of the parties, the nature of the attendant risk and the public interest. First, while Defendants had a relationship with Goodell, they did not have a relationship with Plaintiff. Second, in terms of the nature of the attendant risk, Plaintiff contends that Defendants put the community at risk by failing to properly monitor the parolees in their charge. Defendants maintain that Plaintiff's lack evidence to support their claim, but the Court finds Plaintiff's claim sufficient for the motion to dismiss. Third, with respect to the public interest, the public interest is clearly served by imposing a duty of care on Defendants. In a similar case dealing with the escape of a dangerous prisoner from a halfway house, a judge in the United States District Court for the District of Columbia explained that that "[u]nless persons injured by [a halfway house's] failure

to properly perform its functions can recover for their injury, society's ability to insure that the [institution] conscientiously performs its duty is rendered haphazard at best." *Smith*, 481 F. Supp. 2d at 187 (D.D.C. 2007) (quoting *White v. United States*, 780 F.2d 97, 103 (D.C. Cir.1986)). This Court agrees, and it concludes, for purposes of the motion to dismiss, that the relevant factors weigh in favor of finding a duty on the part of Defendants. Accordingly, the Court will **DENY** the motion to dismiss Counts I, II, and VII.

2. Immunity

The Court has already determined that the State Defendants are immune from suit under Counts I, II, and VII. *See Tulli-Makowski*, 2013 WL 1987219, at **3-4. The Defendants that filed the instant motion claim to be protected by this same immunity. These Defendants maintain that their "derivative immunity" shields them from Counts I, II, and VII. At the motion to dismiss stage, the Court cannot agree.

Under New Jersey law, "a public contractor may share immunity with the State if, while working under the guidance and supervision of a public, the contractor has not deviated independently and negligently from that contract." *Ornes v. Daniels*, 278 N.J. Super. 536, 541-42 (App. Div. 1995). "A public contractor may be held liable, however, for negligent execution of its contract, as derivative immunity is an affirmative defense for which the contractor bears a burden of both pleading and persuasion." *Id.* Here, Plaintiff maintains that the murder was caused, in part, by Defendants "[f]ailure to adequately fund, staff, equip, manage, and operate the EHCA-CEC Halfway House System." *Id.* ¶ 39(j). Construing this in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged that Defendants' negligently executed their contract with the State of New Jersey, and that this negligence was responsible for Plaintiff's murder. While Plaintiff has not pinpointed which specific contract provision Defendants allegedly violated, the Court finds that Plaintiffs have alleged enough to survive a motion to dismiss. Accordingly, the Court will **DENY** the motion to dismiss Counts I, II, and VII on derivative immunity grounds.

B. State Created Danger (Count III)

Count III is a claim for a state created danger under 42 U.S.C. § 1983. "To establish a state-created danger claim, plaintiffs must plead four elements:

(1) the harm ultimately caused was foreseeable and fairly direct;

7

> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Henry v. City of Erie*, 728 F.3d 275, 282 (3d Cir. 2013) (internal quotation and citation omitted). Defendants move to dismiss Count III, arguing that Plaintiffs have failed to establish the fourth prong of the test. The Court agrees with Defendants.

To satisfy the fourth prong of the state created danger test, a plaintiff must demonstrate that a state actor's affirmative action made the plaintiff more vulnerable to danger than if the state actor had done nothing. Plaintiffs claim that Defendants (who Plaintiff treats as state actors) made Plaintiff more vulnerable to danger than should would otherwise have been. In support of this argument, Plaintiff points to the following examples:

- EHCA-CEC operated its Halfway House system "in a reckless, careless, negligent manner" that invited escapes, exposed the public to criminal conduct, and violated New Jersey law governing the treatment of parolees, Compl. ¶ 62(a)-(c);

- EHCA-CEC failed to supervise Goodell, *id.* at ¶ 62(d); and

- EHCA-CEC failed to warn Plaintiff or protect her when Goodell escaped, *id.* at 62(e).

Plaintiffs sum up as follows: "the acts and omissions of the CEC-Defendants, in their negligent careless, and reckless operation, maintenance, and structuring of halfway-houses in New Jersey placed Plaintiff in a far worse position [than she would have been in] had the CEC-Defendants never acted at all." Opp. Br. at 22, ECF No. 32.

8

Defendants argue: "it is clear that the essence of the Plaintiff's claim against the CEC Defendants is that these Defendants failed to take action to protect Viviana Tulli from the criminal act of Goodell, including the failure to adequately supervise Goodell during the time he was transported to the hospital." Reply Br. at 11, ECF No. 34. Defendants are correct. It is not enough to allege, in a conclusory fashion, that EHCA and CEC operated Logan Hall in a negligent manner. To allege a state created danger claim, Plaintiff has to identify affirmative action on the part of Defendants. Here, Plaintiff has identified inaction, namely, a failure to supervise and a failure to warn. Accordingly, the Court will **DISMISS** Count III **WITH PREJUDICE**.

### C. Fundamental Fairness (Count IV)

Count IV is a claim sounding in the doctrine of fundamental fairness. Plaintiff alleges that Defendants violated the doctrine of fundamental fairness by "illegally, recklessly, negligently" operating the EHCA-CEC Halfway House system." Compl. ¶ 75. Defendants move to dismiss Count IV, arguing that Plaintiff's allegations do not allege a claim under the doctrine of fundamental fairness. The Court agrees with Defendants.

"New Jersey's doctrine of fundamental fairness 'serves to protect citizens generally against unjust and arbitrary governmental action, and specifically against governmental *procedures* that tend to operate arbitrarily." *Doe v. Poritz*, 142 N.J. 1, 108 (1995) (emphasis in original). In situations quite different from the case at hand, courts have invoked the doctrine of fundamental fairness to allow a defendant to view a presentence report, and to require that a prisoner be given reasons why his parole was denied. *See id.* (collecting cases). Here, Plaintiff was not subject to arbitrary procedures or any other unjust and arbitrary governmental action. Accordingly, the Court will **DISMISS** Count IV **WITH PREJUDICE**.

### D. Illegal Operation of a Halfway House (Count V)

Count V alleges that Defendants are liable under N.J.S.A. § 30:4-91.2 ("Section 30:4-91.2"). Section 30:4-91.2 allows the Commissioner of the Department of Corrections to confine inmates at "institutions" or "facilities," a term that includes "private non-profit community-based residential treatment centers." *Id.* Plaintiff maintains that Defendants violated Section 30:4-91.2 because they effectively operated a for-profit residential treatment center, rather than a non-profit center. Defendants move

to dismiss Count V, arguing that Section 30:4-91.2 lacks a private right of action. The Court finds Defendants' argument convincing.

Section 30:4-91.2 does not explicitly contain a private right of action. Accordingly, if Section 30:4-91.2 contains a private right of action, that right must be implied. "To determine if a statute confers an implied private right of action, courts consider whether: (1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy." *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 272 (2001). Plaintiff effectively concedes the absence of a private right of action under this test. She points to no evidence suggesting that Section 30:4-91.2 was enacted for the benefit of victims like herself. Similarly, she points to no evidence that the New Jersey Legislature intended to create a private right of action under the Section 30:4-91.2, and she makes no argument that it would be consistent with the legislative scheme to infer a private right of action under Section 30:4-91.2. Accordingly, the Court will **DISMISS** Count V **WITH PREJUDICE**.

### E. Piercing the Corporate Veil (Count VI)

Count VI is a claim for piercing the corporate veil. Defendants move to dismiss Count VI, arguing that there is no independent cause of action for piercing the corporate veil. Defendants are correct. *See Swift v. Pandey*, No. 13-650, 2013 WL 6054853, at *12 (D.N.J. Nov. 13, 2013) ("'[p]iercing the corporate veil is an equitable *remedy* through which a court may impose liability on an individual or entity normally subject to the limited liability protections of the corporate form,' and not a distinct cause of action") (internal citation omitted); *see also* 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.28 ("An attempt to pierce the corporate veil is not itself a cause of action but rather is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract."). Accordingly, the Court will **DISMISS** Count VI **WITH PREJUDICE**. However, the dismissal does not prevent Plaintiff from attempting to pierce the corporate veil *as a remedy* if Plaintiff prevails on any of the counts in the Complaint.

## IV. CONCULUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED IN PART**, and **DENIED IN PART**. Counts III, IV, V, and VI are **DISMISSED WITH PREJUDICE**. Counts I, II, and VII survive. An appropriate order follows.

/s/ William J. Martini
WILLIAM J. MARTINI, U.S.D.J.